IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

```
MELISSA Hall,                              )
on behalf of herself                       )
and others similarly situated,             )
                                           )
        Plaintiffs,                        )
                                           )
             v.                            )    No.
                                           )
COUNTY OF MILWAUKEE, DAVID A.              )
CLARKE, JR., in his                        )
Official capacity,                         )
                                           )
                                           )    JURY TRIAL DEMANDED
        Defendants.                        )
```

**COMPLAINT**

Plaintiff MELISSA HALL on behalf of herself and all others similarly situated, and complaining of Defendants, COUNTY OF MILWAUKEE, DAVID A. CLARKE, JR., states as follows:

**Introduction**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights, and all those similarly situated, as secured by the United States Constitution.

**Jurisdiction and Venue**

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this

1

judicial district, and the events giving rise to the claims asserted herein all occurred within district.

## Parties

4. Plaintiff, Melissa Hall, is 27 years old. From February-August 2013, she was an inmate at the Milwaukee County Jail. During her incarceration, Plaintiff was pregnant. She received prenatal and post-partum care and was hospitalized for childbirth and delivery.

5. Defendant David A. Clarke, Jr. is the Sheriff of Milwaukee County. In that capacity he is in charge of the Milwaukee County Jail ("MCJ"). By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the MCJ comply with federal and state requirements for the treatment of detainees. He has had personal knowledge that the shackling practices challenged in this case were occurring at the jail. He is sued in his official capacity.

6. The County of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

## Facts

7. Plaintiff was forced to receive pre-natal care, labor, give birth, and undergo post-partum treatment while shackled, in accordance with the Jail's policy, custom, and/or widespread

2

practice of shackling all detainees during medical treatment. Armed deputies were present for the entirety of Plaintiff Hall's hospitalization for childbirth.

8. For example, when Plaintiff was hospitalized for childbirth and left her hospital bed to go to the bathroom, she was made to wear a "belly-chain" around her waist with her wrists attached to the waist and her legs attached to one another by leg-irons.

9. During her labor and delivery, Plaintiff's medical providers asked to have the shackles removed and the deputies refused.

10. As a result of the shackling, medical professionals had difficulty administering an epidural to Plaintiff. The shackling and its consequences caused emotional and physical pain and suffering, discomfort, left marks on Plaintiff's body, and exposed her to unreasonable risks of harm.

11. The Jail's blanket shackling policy, and its shackling of Plaintiff, are not rationally related to a legitimate, non-punitive purpose. Alternatively, it is excessive in relation to any legitimate purpose it allegedly serves.

12. The policy includes no provisions for individualized evaluations of each pregnant inmate. Rather, it ensures that correctional officers shackle all pregnant women (and in fact all hospitalized inmates), without regard to their criminal history

3

or medical history.

13. Plaintiff's shackling during prenatal care, labor, delivery, and post-partum treatment pursuant to the jail's blanket shackling policy constituted impermissible punishment in violation of her Fourteenth Amendment rights and exposed her to unreasonable risks of harm.

14. For instance, shackling women during labor can lead to: an inability for medical staff to assess hemorrhaging, rapidly perform an emergency caesarian section, or move a woman to address an umbilical cord wrapped around the baby's windpipe, as well as a variety of other problems.

15. Belly chains and leg irons can impact the mother's balance and increase the risk of falls thereby endangering the life and health of the child. Cuffing a woman's hands may prevent the breaking of a fall and impede a woman's ability to protect her stomach. Preventing walking during the first stage of labor may deny the woman the benefits of labor acceleration and discomfort alleviation. Preventing walking during the postpartum phase may enhance the risk of deep vein thrombosis and its life-threatening embolic complications.

16. Complete freedom of motion is absolutely required during delivery because various pelvic and lower extremity manipulations may be employed to facilitate delivery, especially in difficult cases (e.g., "Shoulder Dystocia").

4

17. The American Correctional Association, the American Bar Association, the American Public Health Association, the American College of Obstetricians and Gynecologists, the American College of Nurse Midwives, and the World Health Organization have all opposed use of perinatal restraints.

18. In October 2007, the U.S. Marshals Service revised its restraint policies, all but eliminating the shackling of pregnant federal pretrial detainees and inmates, unless deemed necessary by compelling security considerations. The policy stated that "restraints should not be used when compelling medical reasons dictate, including when a pregnant prisoner is in labor, is delivering her baby, or is in immediate post-delivery recuperation." Special emphasis was placed on the use of the least restrictive constraints "to ensure safety and security."

19. Shortly thereafter, the Federal Bureau of Prisons, home to 14,000 federal female inmates, amended its policy to bar the shackling of pregnant inmates in labor, delivery, or post-delivery recuperation "unless there are reasonable grounds to believe the inmate presents an immediate, serious threat of hurting herself, staff or others, or there are reasonable grounds to believe the inmate presents an immediate and credible risk of escape that cannot be reasonably contained through other methods." The policy also indicated that if an inmate is restrained while in labor (or while delivering her baby), the

restraints must be "the least restrictive restraints necessary to still ensure safety and security."

20. More recently, Immigration Customs Enforcement has adopted some of the same principles in its operations manual of performance-based national detention standards.

21. Plaintiff seeks to pursue the shackling claim both for herself and for a class of others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(3).

**The Prospective Class Members**

22. Plaintiff seeks to represent a class consisting of the following people: All persons who, while incarcerated by Milwaukee County Jail, were shackled during prenatal care, labor, delivery, or post-partum treatment at any time from March 14, 2011-present.

23. The individuals in this class are so numerous that joinder of all members is impractical. On information and belief, there are at least 40 prospective class members.

24. There are questions of law and fact common to the claims of the class. Among these common questions are:

- Whether a policy or standard practice of shackling women during prenatal care, childbirth, delivery, and post-partum treatment serves a legitimate governmental purpose; and
- Whether a policy or standard practice of shackling

women during prenatal care, childbirth, delivery, and post-partum treatment is excessive in relation to the governmental purpose allegedly served; and

- Whether a policy or standard practice of shackling women during prenatal care, childbirth, delivery, and post-partum treatment exposes women to unreasonable risks of harm.

25. The shackling claim of Plaintiff Hall is typical of the shackling claims of the class. Plaintiff Hall seeks to prove that the shackling policy violated the constitutional rights of the members of the Class and that the County of Milwaukee and Defendant Clarke are liable.

26. Plaintiff Hall will fairly and accurately represent the interests of the Class. She has retained skilled counsel with experience in class action and constitutional litigation.

27. The questions of law and fact common to the Class predominate over any individual issues. In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

28. The County of Milwaukee and Sheriff Clarke have implemented, encouraged, and/or condoned an unconstitutional policy of shackling women during labor, delivery, and/or recovery from delivery.

29. The misconduct described above was undertaken pursuant

to the policy and practice of the Milwaukee County Jail in that:

As a matter of both policy and practice, the Milwaukee County Jail directly encourages, and therefore is the moving force behind, the very type of misconduct at issue here—shackling women during prenatal and post-partum care as well as during labor and delivery.

**Count I - 42 U.S.C. § 1983**
**Due Process – 14th Amendment**
**(Class Claim)**

30. Each paragraph of this Complaint is incorporated herein.

31. Defendants County and Sheriff Clarke violated the liberty interest in bodily integrity of Plaintiff and the members of the Class through the shackling policy. Likewise, the County and Sheriff Clarke exposed Plaintiff and the members of the Class to unreasonable risks of harm through the shackling policy.

32. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonable.

33. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, the County of Milwaukee, is liable for their actions.

34. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Milwaukee County Jail

in the manner described more fully above.

35. As a result of the misconduct described in this Count, Plaintiff and the members of the Class have suffered damages, including but not limited to emotional distress and anguish, as well as physical pain and suffering, and exposure to unreasonable risks of harm.

### Count II – Indemnification

36. Each of the foregoing paragraphs is incorporated as if fully stated herein.

37. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

38. Defendant Clark was an employee of the County of Milwaukee, who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff MELISSA HALL on behalf of herself and the members of the class, respectfully requests that this Court 1) appoint Loevy & Loevy as class counsel on behalf of the prospective class; and 2) enter judgment in her favor and against Defendants, COUNTY OF MILWAUKEE, DAVID A. CLARKE, JR., awarding compensatory damages and attorneys' fees, as well as any other relief this Court deems just and appropriate.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**JURY DEMAND**

Plaintiff, MELISSA HALL, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Theresa Kleinhaus
Attorneys for Plaintiff

Arthur Loevy
Michael Kanovitz
Scott Rauscher
Theresa Kleinhaus
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
312) 243-5900