# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MELISSA HALL, individually and on behalf of all others similarly situated,**
   Plaintiff,

  v.                Case No. 17-C-0379

**COUNTY OF MILWAUKEE and
RICHARD R. SCHMIDT, in his Official
Capacity as Sheriff of Milwaukee County,**[1]
   Defendant.

---

## DECISION AND ORDER

  The Sheriff of Milwaukee County runs the Milwaukee County Jail and maintains a policy under which all detainees must be shackled to their beds while they are receiving medical treatment at a hospital. Until recently, the sheriff applied this policy to pregnant detainees who were hospitalized for childbirth. Melissa Hall was a detainee at the Milwaukee County Jail during the time when this policy was in force. She was shackled to her hospital bed during labor, delivery, and post-partum treatment. She filed this action under 42 U.S.C. § 1983 against Milwaukee County and its sheriff, alleging that the sheriff's policy, as applied to pregnant women during childbirth, violated the Due Process Clause of the Fourteenth Amendment. Hall proposes to represent a class of all women who were confined in the jail while the policy was in force and who were

---

[1] When the plaintiff filed this case, the Sheriff of Milwaukee County was David A. Clarke, Jr. The plaintiff named Clarke, in his official capacity, as a defendant. Richard R. Schmidt has since replaced Clarke as the sheriff. I have amended the caption to reflect that Schmidt was automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

shackled during childbirth. Before me now is her motion to certify the class under Federal Rule of Civil Procedure 23.

## I. FACTS

The plaintiff was incarcerated at the Milwaukee County Jail from February 2013 to August 2013. During this time, the official policy of the Milwaukee County Sheriff was that "[i]nmates in the hospital will be restrained by a handcuff and leg iron attached to the side rail of the bed." (Pl.'s Exs. 2 & 3; ECF Nos. 31-2 & 31-3.) The policy made no exception for pregnant inmates who were hospitalized for childbirth. Moreover, the sheriff's department made no individualized assessment of an inmate before deciding to shackle her during childbirth.

While she was in the jail, the plaintiff spent two days in the hospital for labor, delivery, and post-partum care. At the hospital, she was restrained with leg irons, wrist restraints, and a belly chain. At least one armed sheriff's deputy was in the room with her at all times. The plaintiff asked to have the restraints removed, but the deputies refused. A nurse asked to have the restraints removed while the plaintiff was undergoing a stress test, but again the deputies refused. During delivery, the doctor asked to have some of the restraints removed. The deputies agreed to remove the belly chain, but the plaintiff remained shackled to the bed with a handcuff and a leg iron. The shackles made it difficult to administer an epidural, left marks on the plaintiff's wrists, cut her ankles, and made it difficult for her to hold her newborn son.

According to the plaintiff, at least 45 inmates were shackled during childbirth while the sheriff's policy was in force. Seven of these women have filed declarations in

this case. In their declarations, they describe being restrained under circumstances similar to the plaintiff's.

## II. DISCUSSION

The plaintiff proposes to have the claims of the 45 women who were shackled during childbirth adjudicated as a class action. When a case is certified as a class action, a class representative litigates a common claim on behalf of a large group of similarly situated persons. Because the claim of the class representative is largely the same as the claims of the absent class members, using the class device enables the court to resolve most of the issues that affect all class members by adjudicating only the class representative's claim.

To determine whether a class may be certified, I must conduct a two-step analysis. Under the first step, I must determine whether the plaintiff has satisfied the four express requirements of Federal Rule of Civil Procedure 23(a) and a fifth, implied requirement not mentioned in the rule but enforced by the courts. The four express requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claim of the named plaintiff is typical of the claims of the class members; and (4) the plaintiff will fairly and adequately protect the interests of the class. These four requirements are known as "numerosity," "commonality," "typicality," and "adequacy of representation." The fifth, implied requirement is known as "ascertainability." It requires that the class "be defined clearly" and that its membership be determined "by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

Under the second step of the analysis, I must determine whether the case meets one of the three criteria identified in Federal Rule of Civil Procedure 23(b). In the present case, Hall seeks to have the class certified under Rule 23(b)(3). This is allowed only if (a) questions of law or fact common to the class members predominate over questions affecting only individual members and (b) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In order to analyze whether the plaintiff's claim satisfies the above requirements, I must first describe the nature of her claim. The plaintiff alleges that, by restraining her during childbirth, the sheriff deprived her of her right to be free from the use of unnecessary bodily restraints. *See May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000).[2] The use of bodily restraints is unnecessary "if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *Id.* To apply this standard, a court balances the detainee's interest in being free from unnecessary restraints against the jail's reason for using the restraints, *i.e.*, preventing escapes and protecting the safety of inmates, guards, and medical providers. *See Hart v. Sheahan*, 396 F.3d 887, 893 (7th Cir. 2005). If, under the circumstances, the risk of the inmate's escaping or harming another

---

[2] The due-process right at issue in this case applies only to "pretrial detainees," who are persons who have been charged with crimes but have not been convicted. *See Bell v. Wolfish*, 441 U.S. 520, 523 (1979). The defendants contend that at least some of the potential class members—including the plaintiff herself—were serving criminal sentences while they were in the jail and therefore do not qualify as pretrial detainees. However, the difference between a pretrial detainee and a convicted prisoner turns out to be irrelevant to the outcome of this motion, and thus I will not discuss it further. Instead, I assume without deciding that the plaintiff and the potential class members were all pretrial detainees.

person does not outweigh the inmate's interest in being free from the restraints, then applying the restraints will violate the inmate's constitutional rights.

For the plaintiff to prevail on her claim, then, she must show that the jail did not have sufficient reason to believe that she would attempt to escape or to harm herself or others if she was not shackled during childbirth. But here we immediately encounter a problem that prevents me from certifying the plaintiff's claim as a class action: each inmate is different, and thus, at least in theory, the sheriff could have had sufficient reason for shackling some inmates but not others. Some inmates may be more dangerous or likely to attempt an escape than others. Perhaps the vast majority of inmates will not try to escape or to harm themselves or others while they are in the hospital for childbirth. For these women, the sheriff's interest in preventing escapes and harm to other persons would likely not justify the use of shackles during childbirth. But it is at least conceivable that an inmate could be so dangerous or likely to attempt an escape that the sheriff would be justified in restraining her during childbirth. Thus, the claims of the potential class members are not amenable to resolution on a representative basis. That is, resolving the plaintiff's claim will not go very far towards resolving the claim of any other potential class member. If the plaintiff wins her claim, all that she will have established is that the sheriff did not have reason to believe that she was so dangerous or likely to escape that she needed to be restrained during childbirth. It would not follow from the resolution of her claim that the sheriff did not have reason to believe that any other woman in the class was so dangerous or likely to escape that she needed to be restrained during childbirth. Rather, to resolve the claims

of the other women, the facts and circumstances applicable to each of them would have to be examined. This would require 45 separate trials.

The plaintiff attempts to get around this problem by noting that her theory of the case is that there could never be an adequate justification for shackling any woman during labor, delivery, or post-partum care, no matter how dangerous she may be. (Reply Br. at 7, ECF No. 39.) But this tactic fails for two reasons. First, in order to win her own claim, the plaintiff does not have to prove that there could never be an adequate justification for shackling a woman during childbirth. Instead, all the plaintiff has to prove is that the jail did not have an adequate justification for shackling *her*. The same goes for the other class members: each of them only has to prove that the sheriff did not have sufficient reason for shackling her. None of them has to also prove that the sheriff could never constitutionally shackle a woman during childbirth.

The second problem with the plaintiff's tactic is that answering the plaintiff's proposed common question will not necessarily go a long way towards resolving the claims of the proposed class. To be sure, if the court agreed with the plaintiff and found that there could never be an adequate justification for shackling an inmate during childbirth, then the plaintiff will have established that every class member was unlawfully shackled, and this would go a long way towards resolving the claims of the entire class. But if the court *disagreed* with the plaintiff and determined that the sheriff could shackle an inmate during childbirth under some circumstances, then the answer would not resolve any class member's claim. Instead, the court would have to separately examine the facts and circumstances surrounding each class member to determine whether the sheriff violated her constitutional rights.

The above problems show that there are no "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the analysis above shows, in the present case there is no question that can be answered in a way that will resolve an issue that is central to the validity of all 45 potential class members' claims in one stroke. Instead, the court must look at the facts and circumstances surrounding each individual class member to determine whether the sheriff had an adequate justification for shackling her during childbirth.

In another attempt to demonstrate that the claims of the proposed class raise common questions, the plaintiff notes that the sheriff applied his shackling policy to every inmate who was hospitalized for childbirth and did not individually assess an inmate to determine whether she was dangerous enough to warrant shackling. The plaintiff argues that, for this reason, the fact that the sheriff "theoretically could have justified using shackles on some of the women . . . does not undercut the fact that common issues will dominate this case." (Reply Br. at 6.) However, no potential class member's rights were violated by the mere existence of the policy or by the mere fact that the sheriff did not perform an individualized assessment before deciding to restrain her. Rather, to the extent that any constitutional violations occurred, they occurred when the sheriff applied shackles to inmates who were insufficiently likely to try to escape or to harm others while they were in the hospital for childbirth. Even though the sheriff, in effect, assumed that all inmates were likely to try to escape or to harm others

if they were not shackled during childbirth, it does not follow that the sheriff violated the rights of every shackled inmate. The sheriff may be able to show that at least some of the inmates were dangerous enough to warrant shackling under the applicable constitutional standard. For those inmates, the sheriff's blanket policy would not have resulted in a violation of their rights. Thus, separate trials will be needed to determine which, if any, inmates suffered constitutional violations when the policy was applied to them.

Of course, whether the sheriff maintained a policy under which all inmates were shackled during childbirth is a common question of fact that applies to every class member's claim. But this question of fact is undisputed and will require no litigation—the sheriff concedes that the policy existed and that it was uniformly applied to all women during childbirth. Thus, even if this question of fact qualified as a common question for purposes of Rule 23(a)(2), it would constitute only a very small part of this case. The individual issues—including whether any given class member was unconstitutionally shackled—would predominate. As is relevant to this case, a class may be certified only if the common questions rather than the individual issues predominate. *See* Fed. R. Civ. P. 23(b)(3). So the question of whether the sheriff maintained the shackling policy is not a question that can, by itself, serve as a basis for class certification.

Although I must deny the plaintiff's motion for class certification, I note that this does not mean that the plaintiff and the other inmates who were shackled during childbirth cannot litigate their claims simultaneously as part of a single legal proceeding. Under Federal Rule of Civil Procedure 20, persons having similar claims against a

defendant may join in one action as plaintiffs. *See* Fed. R. Civ. P. 20(a)(1). Moreover, the court may consolidate separate actions that raise similar issues. *See* Fed. R. Civ. P. 42. Unlike with a class action, neither of these options would allow the plaintiff to represent the other women. Rather, each woman would have to be named as a plaintiff, and each woman's claim would have to be individually adjudicated. But it may be more efficient to conduct joint proceedings on the separate claims. For example, because many of the same documents and witnesses will be involved in each claim, it may make sense to consolidate the claims for purposes of discovery. Thus, the plaintiff and the other women who were injured by the sheriff's policy may wish to consider pursuing joinder under Rule 20 or consolidation under Rule 42.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for class certification (ECF No. 31) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 23rd day of May, 2018.

        s/Lynn Adelman_____
        LYNN ADELMAN
        United States District Judge